(88 App. Div. 554.)

## McHUGH v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

**1. INJURY TO RAILROAD EMPLOYÉ—EMPLOYERS' LIABILITY ACT.**

In an action for negligent death of an employé, where there was no evidence that the location at which deceased was working was defective, that any appliances were out of order, or that any precaution was omitted by defendant that was possible to protect deceased in the performance of his work, no liability was shown under the employers' liability act (Laws 1902, p. 1748, c. 600, § 1, subd. 1), giving an action for injury to an employé caused by reason of a defect arising from the employer's negligence in the ways, works, or machinery connected with the employer's business.

**2. SAME—NEGLIGENCE OF SUPERINTENDENT—EVIDENCE—SUFFICIENCY.**

In an action against a railroad for death of a servant engaged in coupling cars, evidence examined, and *held* insufficient to show that injury resulted from the negligence of one engaged in superintendence, or one acting as superintendent, within the meaning of the employers' liability act (Laws 1902, p. 1748, c. 600, § 1, subd. 2), giving an action in such case.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

In an action against a railroad for death of a servant engaged in coupling cars, evidence examined, and *held* insufficient to show that the servant was himself in the exercise of due care, within the employers' liability act (Laws 1902, p. 1748, c. 600, § 1, subd. 2), giving an action for servant's injuries resulting from the negligence of one intrusted with superintendence when the servant is in the exercise of due care and diligence.

**4. SAME—BURDEN OF PROOF.**

Under the employers' liability act (Laws 1902, p. 1748, c. 600, § 1, subd. 2), giving an action for servant's injuries resulting from negligence of one intrusted with superintendence, when the servant is in the exercise of due care and diligence, it must be shown that the servant was in the exercise of such care, to authorize a recovery.

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Kate McHugh, as administratrix of Frank McHugh, deceased, against the Manhattan Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert C. Smyth, for appellant.
Alfred A. Wheat, for respondent.

INGRAHAM, J. The plaintiff sues to recover the damages sustained by the death of her intestate, under the employers' liability act (chapter 600, p. 1748, of the Laws of 1902). Subdivision 2 of section 1 of that act provides that where an injury is caused to an employé who is himself in the exercise of due care and diligence at the time—

"By reason of the negligence of any person in the service of the employer entrusted with and exercising superintendence whose sole or principal duty is that of superintendence, or in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer; the employé, or in case the injury results in death, the executor or administrator of a deceased employé who has left him surviving a husband,

wife or next of kin, shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer nor engaged in his work."

The complaint alleges that the plaintiff's intestate was in the employ of the defendant at the time of his death; that on the 1st day of September, 1902, while the plaintiff's intestate was at work for the defendant, and while in the exercise of due care for his own safety, he was, owing to the carelessness and negligence of the defendant, its agents and servants, run over by one of the cars of the defendant, and caused to sustain severe injuries, resulting in his death on the same day.

One Coleman, who was train dispatcher and had charge of the Rector street yard on the day of the intestate's death, was called as a witness for the plaintiff, and testified that the train guards and conductors receive their instructions from the train dispatcher as to when to take their trains out by means of an electric bell; that this electric bell is rung by the electric buttons, which are situated, one in the train dispatcher's office, and one on the platform; that when the gong is rung to start the train the guards on the train pass the signal by the bell cord to the conductor, and he gives the signal to the engineer, and the train then moves out; that the engineer regulates his movements by the signal he gets from the conductor, but no trains leave this platform unless a signal has been given by the dispatcher's gong; that the coupling of the engine with the cars was done at the front end of the first car by a man who went between the engine and the car; that this man had first to enter the link in the north drawhead of the north car, then couple the vacuum hose, and then couple two safety chains connecting the locomotive with the first car; that this coupling is at the north end of the east platform, opposite the train dispatcher's office; that it is the duty of the train dispatcher to see that the coupling is completed before ringing the gong; that in the absence of the witness one Flanagan, who was called the "operator" or "train clerk," performed this duty; that at the time of the accident the witness was in the train dispatcher's office, receiving a telegraphic message, and that he gave no signal for the train to start; that Flanigan was outside, attending to this duty; that the witness did not hear the gong sound to start the train; that the deceased who had been for many years in the employ of the railroad company, had been performing the duty of coupler for over two years before the accident; that the time between the sounding of the gong and the starting of the train would be about eight seconds; that he saw the plaintiff's intestate after the accident; that he was almost in the center of the two rails, with his right knee pushed under the south wheel on the north track; that Flanagan's duties were the taking of the numbers of the different cars and engines as the train went out, keeping a record of the movements of the trains, and attending to the moving of trains when the train dispatcher was called into his office occasionally on business; that this would happen two or three times a day, and had been going on for two years. Lynch, a collector for the Automatic Vending Company, which had machines on this platform, testified that at the time of the accident he

was filling a machine about 50 feet from the south end of the platform; that he saw the plaintiff's intestate upon the third track at that time; that just at that moment the train came in on the east track, and the deceased walked towards the north end of the train; that the witness left the machine, and walked to a machine on the north end of the platform; that when he got to this machine he looked for the plaintiff's intestate, and could see him through the glass windows of the train going along the side of the car to the first car of the train; that he went between the car and the engine, and at that time the engine backed down to the car; that while engaged with his machine the witness heard the dispatcher's gong, and about one second after he heard a yell; that the yell came from the north—the direction of the dispatcher's office where the engine was being coupled to the car; that he did not remember seeing the car start after the gong rang. The engineer of the locomotive testified that he had charge of the engine which was coupled by the plaintiff's intestate at the time he was injured; that, as he moved his engine down to be coupled to the train, he saw the deceased standing by the car, waiting for the engine; that after the engine was coupled he received two bells from the conductor of the train, and he then started the engine; that he then heard the train starter yell, when he at once stopped the engine, after moving nine or ten feet; that he then left the engine, and ran back, and found the plaintiff's intestate under the truck of the first car; that he was under the second axle, one axle had passed over him, and he was fastened between the truck frames and the guard rail by the shoulder; that, when he started, the engine was properly connected with the cars. Upon this evidence both the plaintiff and the defendant rested, whereupon the court dismissed the complaint, and from the judgment entered thereon the plaintiff appeals.

There was no evidence that the location at which the deceased was to do his work was defective in any way, that any of the machines or appliances were out of order, or that any precaution was omitted by the defendant that was possible to protect the deceased in the performance of his work. There was nothing, therefore, to bring the case within subdivision 1 of section 1 of the employers' liability act; and, to sustain this action, we must find evidence to justify a finding that by reason of the negligence of a person entrusted with and exercising superintendence, or, in the absence of such superintendent, of a person acting as superintendent, with the authority and consent of the employer, personal injury is caused to an employé "himself in the exercise of due care and diligence at the time." The only evidence that we have is the fact that the train dispatcher was in his office; that another employé, who at such time was in the habit of dispatching the trains, was outside on the platform to take his place in giving the signal for the trains to start; that a signal to start this train was given; that the train started, and after the starting of the train the plaintiff's intestate, who had been engaged in connecting the train and locomotive, was run over and injured. Undoubtedly, if there was evidence that the deceased, when the gong was sounded for the train to leave, was in a position between the locomotive and the train, there would be evidence that the

man who gave the signal to start the car was negligent; but there is no evidence to show where the deceased was at the time the signal to start the train was given. I think the jury, from this evidence, could infer that the employé who had taken the place of the train dispatcher gave a signal to start the train; but it could not be said that that was negligence, unless there was evidence to show that, when the signal was given, the deceased was engaged in coupling the train, or in a position of danger. We have no evidence of what the deceased was doing from the time the engineer saw him standing at the north end of the car, waiting for the engine to back down, until he was picked up under the car. There is nothing to show, and nothing from which the jury could find, that when the gong was sounded the deceased was not clear from the car, and in a position of safety. The coupling of the car to the engine was completed. Of that the engineer testified positively, and it is not contradicted. The deceased had therefore done his work. If, after finishing his work, he had stepped back from between the cars upon the middle track, and stood there and waited for the car to start, it was certainly not negligence for the starter to start the train. It is as reasonable to suppose that he had stepped back from the car, having completed his work of coupling the train with the engine, and that in some way his clothing was caught by the train, or as the train started he slipped and fell, or that he attempted to cross between the engine and the car to the platform, as it is to suppose that the starter started the train when the deceased was between the engine and the car. We have no evidence as to his position at the time the train was started, and, to justify a finding of negligence against the defendant, there must be evidence that the deceased was in a place of danger when the signal was given. Assuming that the train dispatcher gave the signal and that the train started, he was not negligent unless he started the train while the deceased was between the car and the engine, and of that there is no evidence. Flanagan was not called as a witness by either side. He was in the employ of the defendant, and, by a failure of the defendant to call him, the jury were entitled to infer that his evidence would not have helped the defendant; but that inference, so far as I know, has never been held to supply evidence of negligence where there was no such evidence. If there had been evidence that would sustain a finding that when the train dispatcher rang the bell the plaintiff's intestate was in a position of danger, the failure of the defendant to call Flanagan and to contradict that testimony would have justified the inference that, if called, he would not have contradicted it. The evidence was, for the same reason, insufficient to support a finding that the deceased was in the exercise of due care and diligence at the time of the accident. This must be proved, to entitle a person injured to recover under this statute. Why it was that the deceased was under the car is a matter of conjecture, not of proof. The evidence was therefore insufficient to sustain a finding that the negligence of the deceased did not contribute to the accident.

It follows that the evidence was not sufficient to sustain a finding that the defendant was negligent, or that the deceased was free from

contributory negligence, and the judgment must be affirmed, with costs.

VAN BRUNT, P. J., and HATCH, J., concur. PATTERSON, J., concurs in result.

LAUGHLIN, J. I dissent upon the ground that the evidence presented a question of fact for the jury as to whether the deceased was not in a place of danger, in the performance of duty, when the signal to start was given by Flanagan, who, the jury might have found, was acting as superintendent in dispatching trains with the knowledge and consent of defendant, and in the absence from that post of duty of Coleman, the regular dispatcher.